**EXHIBIT B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -  X
UNITED STATES OF AMERICA          :

                                  :

    -v.-                           :

                                  :
ALL ASSETS AND FUNDS CONTAINED IN :
THE FOLLOWING BINANCE ACCOUNTS:   :

                                  :
  1) BINANCE ACCOUNT ID 77119125; :
  2) BINANCE ACCOUNT ID 126431418; :
  3) BINANCE ACCOUNT ID 177870794; :
  4) BINANCE ACCOUNT ID 46381766;  :
  5) BINANCE ACCOUNT ID 184735647; :
  6) BINANCE ACCOUNT ID 89843434;  :
  7) BINANCE ACCOUNT ID 90063455;  :
  8) BINANCE ACCOUNT ID 110720525; :
  9) BINANCE ACCOUNT ID 38246708;  :
 10) BINANCE ACCOUNT ID 10851856;  :
 11) BINANCE ACCOUNT ID 214062148; :
 12) BINANCE ACCOUNT ID 37112946;  :
 13) BINANCE ACCOUNT ID 66161377;  :
 14) BINANCE ACCOUNT ID 166730652; :
 15) BINANCE ACCOUNT ID 10876619;  :
 16) BINANCE ACCOUNT ID 145203723; :
 17) BINANCE ACCOUNT ID 40782626;  :
 18) BINANCE ACCOUNT ID 64959391;  :
 19) BINANCE ACCOUNT ID 37516098;  :
 20) BINANCE ACCOUNT ID 113476746; :
 21) BINANCE ACCOUNT ID 91345082;  :
 22) BINANCE ACCOUNT ID 41226929;  :
 23) BINANCE ACCOUNT ID 56577372;  :
 24) BINANCE ACCOUNT ID 148017544  :

                                  :
AND ALL FUNDS TRACEABLE THERETO TO :
EACH  LISTED  ACCOUNT,  INCLUDING :
ACCRUED INTEREST.                  :

                                  :
             Defendant-in-rem.     :

                                  :
- - - - - - - - - - - - - - - - -  X

# 22 MAG 1572

**SEALED ORDER**

**WARRANT OF SEIZURE**
**PURSUANT TO 18 U.S.C. §§ 981 AND 984**

TO:  ANY DESIGNATED OFFICER OF THE FEDERAL BUREAU OF
     INVESTIGATION, AND/OR ANY LAW ENFORCEMENT OFFICER
     AUTHORIZED BY LAW

An Affidavit having been made before me by MARY BOOTHE, Special Agent with the Federal Bureau of Investigation ("FBI"), that she has reason to believe that the above-captioned funds are subject to seizure and civil forfeiture pursuant to 18 U.S.C. § 981, and as I am satisfied that there is probable cause to believe that the property so described is subject to seizure and civil forfeiture pursuant to 18 U.S.C. §§ 981 and 984.

YOU ARE HEREBY COMMANDED AND AUTHORIZED to transmit this warrant to the central authority of any foreign state for service in accordance with any treaty or other international agreement, or to seize the property described below within fourteen (14) days of the date of issuance of this warrant by serving a copy of this warrant of seizure upon any person presently in possession of the property, described as follows:

ALL ASSETS AND FUNDS CONTAINED IN THE FOLLOWING 24 BINANCE ACCOUNT IDS:

- Binance Account ID 77119125;

- Binance Account ID 126431418;

- Binance Account ID 177870794;

- Binance Account ID 46381766;

- Binance Account ID 184735647;

- Binance Account ID 89843434;

- Binance Account ID 90063455;

- Binance Account ID 110720525;

- Binance Account ID 38246708;

- Binance Account ID 10851856;

- Binance Account ID 214062148;

- Binance Account ID 37112946;

- Binance Account ID 66161377;

- Binance Account ID 166730652;

- Binance Account ID 10876619;

- Binance Account ID 145203723;

- Binance Account ID 40782626;

- Binance Account ID 64959391;

- Binance Account ID 37516098;

- Binance Account ID 113476746;

- Binance Account ID 91345082;

- Binance Account ID 41226929;

- Binance Account ID 56577372; and

- Binance Account ID 148017544

AND ALL FUNDS TRACEABLE THERETO TO EACH LISTED ACCOUNT,
INCLUDING ACCRUED INTEREST.

YOU ARE FURTHER COMMANDED AND AUTHORIZED to prepare a written inventory of the property seized and promptly return this warrant and return this Court as required by law.

Dated:    New York, New York
          February 15, 2022


_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

| RETURN | | |
|---|---|---|
| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PROPERTY TAKEN PURSUANT TO THE WARRANT

## CERTIFICATION

I swear that this inventory is a true and detailed account of all the property taken by me on the warrant

_____

Subscribed, sworn to, and returned before me this date.

*Federal Judge or U.S. Magistrate*                    *Date*

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
By: Danielle M. Kudla
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2304

**22 MAG 1572**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -   X

UNITED STATES OF AMERICA

        -v.-

ALL ASSETS AND FUNDS CONTAINED IN
THE FOLLOWING BINANCE ACCOUNTS:

  1) BINANCE ACCOUNT ID 77119125;
  2) BINANCE ACCOUNT ID 126431418;
  3) BINANCE ACCOUNT ID 177870794;
  4) BINANCE ACCOUNT ID 46381766;
  5) BINANCE ACCOUNT ID 184735647;
  6) BINANCE ACCOUNT ID 89843434;
  7) BINANCE ACCOUNT ID 90063455;
  8) BINANCE ACCOUNT ID 110720525;
  9) BINANCE ACCOUNT ID 38246708;
10) BINANCE ACCOUNT ID 10851856;
11) BINANCE ACCOUNT ID 214062148;
12) BINANCE ACCOUNT ID 37112946;
13) BINANCE ACCOUNT ID 66161377;
14) BINANCE ACCOUNT ID 166730652;
15) BINANCE ACCOUNT ID 10876619;
16) BINANCE ACCOUNT ID 145203723;
17) BINANCE ACCOUNT ID 40782626;
18) BINANCE ACCOUNT ID 64959391;
19) BINANCE ACCOUNT ID 37516098;
20) BINANCE ACCOUNT ID 113476746;
21) BINANCE ACCOUNT ID 91345082;
22) BINANCE ACCOUNT ID 41226929;

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**TO BE FILED UNDER SEAL**

AFFIDAVIT IN SUPPORT
OF SEIZURE WARRANT
IN REM PURSUANT TO
18 U.S.C. §§ 981
AND 984

1

```
23) BINANCE ACCOUNT ID 56577372;   :
24) BINANCE ACCOUNT ID 148017544   :
                                   :
AND ALL FUNDS TRACEABLE THERETO TO :
EACH LISTED ACCOUNT, INCLUDING     :
ACCRUED INTEREST.                  :
                                   :
            Defendant-in-rem.      :
                                   :
- - - - - - - - - - - - - - - - -  X
```

```
STATE OF NEW YORK              )
COUNTY OF NEW YORK             :ss.:
SOUTHERN DISTRICT OF NEW YORK  )
```

MARY BOOTHE, being first duly sworn, hereby deposes and states as follows:

1.    I have been a Special Agent with the Federal Bureau of Investigation ("FBI") for approximately one year.  As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. During my time as a Special Agent for the FBI, I have participated in investigations of money laundering and fraud, among other things, and have conducted or participated in surveillance, the execution of search warrants, and the review of financial records and electronic communications.

2.   This affidavit is submitted in support of the Government's Application for the issuance of a seizure warrant, pursuant to 18 U.S.C. §§ 981 and 984, for all assets and funds contained in the following Binance account IDs:

- Binance Account ID 77119125 ("Subject Account-1");

- Binance Account ID 126431418 ("Subject Account-2");

- Binance Account ID 177870794 ("Subject Account-3");

- Binance Account ID 46381766 ("Subject Account-4");

- Binance Account ID 184735647 ("Subject Account-5");

- Binance Account ID 89843434 ("Subject Account-6");

- Binance Account ID 90063455 ("Subject Account-7");

- Binance Account ID 110720525 ("Subject Account-8");

- Binance Account ID 38246708 ("Subject Account-9");

- Binance Account ID 10851856 ("Subject Account-10");

- Binance Account ID 214062148 ("Subject Account-11");

- Binance Account ID 37112946 ("Subject Account-12");

- Binance Account ID 66161377 ("Subject Account-13");

- Binance Account ID 166730652 ("Subject Account-14");

- Binance Account ID 10876619 ("Subject Account-15");

- Binance Account ID 145203723 ("Subject Account-16");

- Binance Account ID 40782626 ("Subject Account-17");

- Binance Account ID 64959391 ("Subject Account-18");

- Binance Account ID 37516098 ("Subject Account-19");

- Binance Account ID 113476746 ("Subject Account-20");

- Binance Account ID 91345082 ("Subject Account-21");

- Binance Account ID 41226929 ("Subject Account-22");

- Binance Account ID 56577372 ("Subject Account-23"); and

- Binance Account ID 148017544 ("Subject Account-24")

(collectively the "Subject Accounts," and all assets and funds in the Subject Accounts being the "Target Property"), and all property traceable thereto, including accrued interest.

3.   The Target Property constitutes the proceeds of, and property traceable to the proceeds of, violations of 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1349 (conspiracy to commit wire fraud), and 18 U.S.C. § 1956 (money laundering) (together, the "Target Offenses"), as described below.

4.   This affidavit is based upon my personal knowledge, my review of documents and other evidence; my conversations with other law enforcement personnel and other individuals; and my training and experience. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they

are reported in substance and in part, except where otherwise indicated.

5.    As set forth below, there is probable cause to believe that the Target Property is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) as property constituting, or derived from proceeds traceable to, a violation of 18 U.S.C. §§ 1343 (wire fraud), 1349 (conspiracy to commit wire fraud), and pursuant to 18 U.S.C. § 981(a)(1)(A) as property, real or personal, involved in a transaction or attempted transaction pursuant to a violation of 18 U.S.C. § 1956 (money laundering).

## STATUTORY BASIS FOR FORFEITURE

6.    The statutory provisions pursuant to which the Target Property is subject to civil seizure and forfeiture are as follows:

*Wire Fraud*

7.    Title 18, United States Code, Section 981(a)(1)(C), subjects to civil forfeiture:

> Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offenses.

8.    For purposes of Section 1956, "specified unlawful activity," defined in 18 U.S.C. § 1956(c)(7), includes, among other things, racketeering activity as defined in 18 U.S.C.

5

§ 1961(1). Section 1961(1), in turn, defines racketeering activity to include wire fraud, in violation of 18 U.S.C. § 1343.

*Money Laundering*

9.    Title 18, United States Code, Section 981(a)(1)(A), subjects to civil forfeiture:

> Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property.

*Seizure Warrants*

10.    The Court is empowered by 18 U.S.C. § 981(b) to issue a seizure warrant for any property subject to forfeiture pursuant to 18 U.S.C. §§ 981 (a)(1)(A) and 981(a)(1)(C). Section 981(b)(2) provides that such a seizure may be made "pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure." In addition, Section 981(b)(3) provides that, notwithstanding the provisions of Federal Rule of Criminal Procedure 41(a), a seizure warrant may be issued pursuant to Section 981(b) by a judicial officer in any district in which a forfeiture action against the property may be filed under Title 28, United States Code, Section 1355(b). Under Section 1355(b)(1)(A), a forfeiture action or proceeding may be brought in the district in which any of the acts or omissions giving rise to the forfeiture occurred. As set forth

below, the offenses underlying the requested seizure warrant included acts or omissions occurring in the Southern District of New York. Title 18, United States Code, Section 981(b)(3) further provides that a seizure warrant may be executed by "transmit[ting it] to the central authority of any foreign state for service in accordance with any treaty or other international agreement."

11. With respect to fungible property, including cash and funds deposited in a financial institution, 18 U.S.C. § 984 provides, in relevant part, that:

> (a)(1) In any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution .., or precious metals:
>
> (A)   it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
>
> (B)   it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
> (2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.
>
> (b) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

**PROBABLE CAUSE THAT THE FUNDS IN THE SUBJECT ACCOUNTS
ARE SUBJECT TO SEIZURE AND FORFEITURE**

**Overview**

12.  As relevant to this application, the FBI and the U.S. Attorney's Office for the Southern District of New York are currently investigating a business email compromise ("BEC") and romance fraud and money laundering scheme that began at least in February 2021 and lasted until at least September 2021. Specifically, in or around February 2021, a woman (the "Victim") met an individual online who asked to be called "Eddie Hernandez" (the "Target Subject") and portrayed himself as the Victim's romantic partner.  At the Target Subject's direction, the Victim opened business and personal bank accounts, which received nearly $10 million from a real estate company in Santa Ana, California ("Business Victim-1") and a medical/pharmaceutical company in Manhattan, New York ("Business Victim-2" and collectively, the "Business Victims") that incorrectly believed that they were paying legitimate vendor invoices.

13.  In reality, it is believed that certain email accounts for the Business Victims and/or email accounts for parties trusted by the Business Victims were compromised by members of the fraud conspiracy.  Once compromised, the email accounts were used to send email messages that instructed the Business Victims to

8

wire future invoice payments to business bank accounts that had been established by the Victim at the Target Subject's direction. After the Victim received the Business Victims' funds (the "Fraud Proceeds"), the Victim transferred the Fraud Proceeds to personal bank accounts and then to a particular cryptocurrency exchange account at the Target Subject's direction.  Ultimately, the Victim was instructed by the Target Subject to use the Fraud Proceeds to purchase cryptocurrency and transfer the cryptocurrency to various cryptocurrency addresses, which, as outlined in greater detail below, approximately half of which has been traced to the Subject Accounts.

**PROBABLE CAUSE REGARDING THE SUBJECT OFFENSES**

14.  Based on my participation in this investigation and my interview with representatives from Business Victim-1, I have learned, among other things, the following:

a.  Business Victim-1 is a real estate company located in Santa Ana, California.

b.  In or about early July 2021, a Business Victim-1 employee received an email, which appeared to have been sent from a Business Victim-1 vendor instructing Business Victim-1 to send an outstanding invoice payment by wire transfer to a specific account (the "July 2021 Email").

c.    In accordance with the July 21 Email instructions, Business Victim-1 wired approximately $171,535 to a Bank of America account described in greater detail below, *see* paragraph 16(b), in the name of Hernandez Medical Supplies, LLC ("Hernandez Medical Supplies").

d.    In or about October 2021, Business Victim-1 learned that the July 2021 Email was fraudulent when it received a call from the Business Victim-1 vendor regarding the outstanding invoice balance.

15.    Based on my participation in this investigation and my interview with representatives from Business Victim-2, I have learned, among other things, the following:

a.    Business Victim-2 is a medical/pharmaceutical company located in Manhattan, New York.

b.    In or about August 2021, Business Victim-2 received an email, which appeared to have been sent from a Business Victim-2 employee to Business Victim-2's accounts payable department (the "August 2021 Email").  The August 2021 Email instructed Business Victim-2's accounts payable department to change the wiring instructions for a particular Business Victim-2 vendor.

c.    Between in or about September 1, 2021 and September 15, 2021, Business Victim-2 wired approximately $9,540,139.78 in

a series of wire transactions to a Wells Fargo account described in greater detail below, *see* paragraph 16(b), in the name of Hernandez Medical Supplies.

      d.   In or about October 2021, Business Victim-2 learned that the August 2021 Email was fraudulent when the intended Business Victim-2 vendor reported that it did not receive the transferred funds.

      16.   Based on my participation in this investigation, my interviews with the Victim, and my review of WhatsApp electronic communication records provided by the Victim, I have learned, among other things, the following:

      a.   In or about February 2021, the Victim met the Target Subject via an online dating application. Shortly after their online introduction, the Victim and the Target Subject continued to communicate via WhatsApp, an encrypted messaging service, among other electronic communication methods.

      b.   The Target Subject described himself, in substance and in part, as an individual working for the United Nations in Venezuela who owned a medical company that was assisting with the country's COVID-19 outbreak. The Target Subject claimed that he owned companies in the United States and needed the Victim's assistance transferring money from these companies. The Target

11

Subject claimed that the money would be used to purchase medical supplies.  To assist, the Target Subject directed the Victim to take the following actions:

        i.  In or about April 2021, the Target Subject directed the Victim to register Hernandez Medical Supplies as a business entity with the North Dakota Secretary of State.

        ii. Between April 2021 and June 2021, the Target Subject directed the Victim to open two business accounts for Hernandez Medical Supplies at two different financial institutions, Wells Fargo (the "Wells Fargo Business Account") and Bank of America (the "BofA Business Account" and collectively, the "Business Accounts"), along with two personal accounts in the Victim's name at each bank (the "Wells Fargo Personal Account" and the "BofA Personal Account" and collectively, the "Personal Accounts").  The Target Subject directed the Victim to link the Business Accounts to the Personal Accounts at each respective bank.

        iii. In or about July 2021, the Target Subject also directed the Victim to open a Binance cryptocurrency account (the "Binance Account") in the Victim's name.  The Binance Account was linked to the BofA and Wells Fargo Personal Accounts.  Between the Binance Account creation and approximately in or about October 2021, the Target Subject had access and control of the Binance

Account along with the Victim. Based on my training and experience, I know that Binance is a cryptocurrency exchange that allows customers to trade cryptocurrencies for other assets, such as conventional fiat money or other digital currencies.

c. In or about July 2021, the Target Subject asked the Victim to transfer money on his behalf, which the Target Subject said would be used to purchase medical supplies in Venezuela. At the Target Subject's direction, the Victim transferred approximately $170,000 that had been deposited into the BofA Business Account to the BofA Personal Account and then to the Binance Account.

d. In or about September 2021, the Target Subject asked the Victim to transfer additional money on his behalf. At the Target Subject's direction, the Victim transferred approximately $9.5 million that had been deposited into the Wells Fargo Business Account to the Wells Fargo Personal Account and then to the Binance Account through a series of transactions.

e. Each time the Victim transferred funds to the Binance Account, the Target Subject instructed the Victim to purchase Bitcoin, a particular cryptocurrency, with the transferred funds. Thereafter, the Target Subject directed the Victim to transfer the Bitcoin to approximately 12 different

13

cryptocurrency addresses (the "Original Cryptocurrency Addresses"). The Victim did not have access or control of the Original Cryptocurrency Addresses.

f. In or about late September 2021, the Victim was notified by Wells Fargo of suspected fraud activity. When the Victim confronted the Target Subject about the fraud allegations, the Target Subject discontinued communication with the Victim.

17. Based on my review of Binance records and BofA and Wells Fargo bank records produced in response to grand jury subpoenas, I have learned, among other things, the following:

a. On or about July 28, 2021, Business Victim-1 transferred approximately $171,535 to the BofA Business Account. On or about July 28, 2021, approximately $171,541.73 was transferred from the BofA Business Account to the BofA Personal Account. On or about July 29, 2021, approximately $170,000 was transferred from the BofA Personal Account to the Binance Account. On or about July 29, 2021, and on or about August 24, 2021, approximately 4.26812659 Bitcoin, then-valued at approximately

14

$188,610.751,[1] was purchased and transferred from the Binance Account to two of the Original Cryptocurrency Addresses.

b.    Between on or about September 1, 2021 and on or about September 17, 2021, Business Victim-2 transferred approximately $9,540,139.78 to the Wells Fargo Business Account in a series of approximately four wire transactions.  Between on or about September 1, 2021, and on or about September 21, 2021, approximately $9,523,500 was transferred from the Wells Fargo Business Account to the Wells Fargo Personal Account.  Between the same period, approximately $9,519,000 was transferred from the Wells Fargo Personal Account to the Binance Account.[2]  Between the same period, approximately 205.1196697 Bitcoin, then-valued at approximately $9,467,485, was purchased and transferred from the

---

[1] The U.S. dollar estimated value of Bitcoin was determined by averaging the highest and lowest Bitcoin traded amounts during the transfer period at issue.  Based on my training and experience, I believe that the minor variations between the Fraud Proceeds, recorded in U.S. dollars, and the amount of Bitcoin transferred to the Original Cryptocurrency Addresses are due, in part, to the volatility of Bitcoin's valuation.  Based on my review of the Binance, BofA, and Wells Fargo records, it appears that the Victim transferred nearly the entire amount of the Fraud Proceeds to the Original Cryptocurrency Addresses with the exception of approximately $10,000 described below in footnote two.

[2] Based on the Victim's request, the Target Subject gave the Victim approximately $10,000 of the Fraud Proceeds.

Binance Account in various amounts to ten of the Original Cryptocurrency Addresses.

c.    A diagram of the flow of the Fraud Proceeds is outlined below:



## PROBABLE CAUSE REGARDING THE SUBJECT ACCOUNTS

18.    Based on my training and experience, and my conversations with other law enforcement officers, I have learned, among other things, the following:

a.    Cryptocurrency is any currency, money, or money-like asset that is primarily managed, stored, and/or exchanged on digital computer systems.  Cryptocurrency is a decentralized, peer-to-peer form of electronic currency that has no association with banks or governments.  Like traditional fiat currency, there are multiple types of cryptocurrency, such as Bitcoin, Ethereum, Litecoin, and Tether, among others.  Due to its decentralized

nature and limited regulation, cryptocurrency allows users to transfer funds more anonymously than would be possible through traditional banking and credit systems. Although they are legal and have known legitimate uses, cryptocurrency is also known to be used by cybercriminals for money-laundering purposes.

b. Cryptocurrency owners typically store their cryptocurrency in digital "wallets," which are identified by unique electronic "addresses." By maintaining multiple cryptocurrency addresses, those who use cryptocurrency for illicit purposes can attempt to thwart law enforcement's efforts to track the flow of illegal proceeds by quickly transferring illicit proceeds in various amounts through multiple cryptocurrency addresses.

c. Each cryptocurrency transaction, however, regardless of the cryptocurrency denomination, is recorded on a public database commonly referred to as the "blockchain," which acts as an accounting ledger. The blockchain records, among other things, the date and time of each cryptocurrency transaction, the unique cryptocurrency addresses associated with the sending and receiving parties, and the amount of cryptocurrency transferred. Because each cryptocurrency address is unique, law enforcement can review the blockchain to identify relevant cryptocurrency

transactions and trace the flow of cryptocurrency across various cryptocurrency addresses. This form of cryptocurrency tracing is labor intensive and complicated by each transfer to a different cryptocurrency address.

19.    Based on law enforcement's review of Binance records, the blockchain public ledger, and my discussions with other law enforcement officers, I have learned, among other things, the following:

a.    The Original Cryptocurrency Addresses were used to transfer approximately 209.3877963 Bitcoin, then-valued at approximately $9,468,602, in more than 150 separate transactions across numerous cryptocurrency addresses in quick, back-to-back transactions.

b.    Within days after their initial transfers from one of the Original Cryptocurrency Addresses, approximately 104.3853109 Bitcoin, representing approximately half of the Fraud Proceeds were deposited into the Subject Accounts. Specifically, each Subject Account received the following approximate Bitcoin amounts traceable to the Fraud Proceeds:

- *Subject Account-1*:  0.38407565 Bitcoin;

- *Subject Account-2*:  0.09247806 Bitcoin;

- *Subject Account-3*:  0.02330937 Bitcoin;

18

- *Subject Account-4*:  0.04584544 Bitcoin;

- *Subject Account-5*:  5.64188902 Bitcoin;

- *Subject Account-6*:  10.0903650 Bitcoin;

- *Subject Account-7*:  0.08328527 Bitcoin;

- *Subject Account-8*:  0.66875044 Bitcoin;

- *Subject Account-9*:  0.00759616 Bitcoin;

- *Subject Account-10*:  0.00516007 Bitcoin;

- *Subject Account-11*:  35.35763078 Bitcoin;

- *Subject Account-*12:  0.01574103 Bitcoin;

- *Subject Account-13*:  0.08875962 Bitcoin;

- *Subject Account-14*:  0.07602 Bitcoin;

- *Subject Account-15*:  0.11185449 Bitcoin;

- *Subject Account-16*:  2.33767565 Bitcoin;

- *Subject Account-17*:  0.06464140 Bitcoin;

- *Subject Account-18*:  0.05449369 Bitcoin;

- *Subject Account-19*:  1.36093099 Bitcoin;

- *Subject Account-20*:  46.92552132 Bitcoin;

- *Subject Account-21*:  0.04200274 Bitcoin;

- *Subject Account-22*:  0.0582625 Bitcoin;

- *Subject Account-23*:  0.17978881 Bitcoin; and

- *Subject Account-24*:  0.6792333 Bitcoin

19

20.  In total, the Subject Accounts received approximately 104.3853109 Bitcoin in Fraud Proceeds, which, as of February 15, 2021, is valued at approximately $4,608,058.23.[3]

21.  Based on my training and experience and pursuant to 18 U.S.C. § 981(a)(1)(A), I believe that the while the Subject Accounts may also contain funds not directly traceable to the Fraud Proceeds, all the assets in these accounts are subject to forfeiture because the Subject Accounts are used primarily, if not exclusively, for money laundering purposes and facilitated money laundering of the Fraud Proceeds as demonstrated by the multiple deposits of various cryptocurrency amounts over a short period. Based on my training and experience, I believe that this series of quick, back-to-back cryptocurrency transactions, many of which, ultimately resulted in approximately half of the Fraud Proceeds being deposited into the Subject Accounts, is an effort to maintain digital anonymity and launder the Fraud Proceeds.

**CONCLUSION**

22.  Based on the foregoing, I respectfully submit that there is probable cause to believe that funds held in the Subject

---

[3] On or about October 6, 2021, Binance U.S. voluntarily froze the Subject Accounts pending the receipt of a judicially-authorized seizure warrant.

Accounts constituting the Target Property are subject to forfeiture as proceeds traceable to violations of 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1349 (conspiracy to commit wire fraud), and 18 U.S.C. § 1956 (money laundering) or property traceable thereto.

23. Accordingly, pursuant to 18 U.S.C. § 981(b), I respectfully request that the Court issue a warrant authorizing the seizure of the Target Property.

24. At this time, the owner(s) of the Target Property are not aware of the full scope of this investigation by the FBI. Premature disclosure of this investigation may cause the owner(s) to seek to destroy evidence, including electronic evidence, or to flee the United States to avoid investigation or arrest, or to undertake efforts to conceal his illegal proceeds.

25. Accordingly, I also respectfully request that this Affidavit be sealed until further order of the Court so as not to jeopardize the investigation of this matter, except that the Government may without further order from this Court (1) provide this Affidavit to domestic and foreign law enforcement authorities and personnel assisting the Government in this investigation in order to effect the seizure of the Target Property and to otherwise aid in the investigation of this matter, and (2) produce this

Affidavit in any criminal or civil forfeiture proceedings as necessary to comply with any discovery and disclosure obligations.

/s Mary Boothe (By Court with Authorization)
_____
MARY BOOTHE
Special Agent, FBI


Sworn to me through the transmission
of this Affidavit by reliable electronic
means, pursuant to FRCP 41(d)(3) and 4.1,
this **15th** day of February 2022


_____
HONORABLE SARAH L. CAVE
United States Magistrate Judge
Southern District of New York

22